UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 12-CV-2993 (JFB)
_____

DAVID J. DOMINE, ET AL.,

Plaintiffs,

VERSUS

SASHI N. KUMAR, ET AL.,

Defendants.

_____

**MEMORANDUM AND ORDER**
July 5, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs David J. Domine ("Domine"), Anthony S. Presutti ("Presutti") and Zachary J. Ryder ("Ryder") (collectively "plaintiffs"), commenced this action against Sashi N. Kumar, in his capacity as Interim Superintendent and Academic Dean ("Kumar"), Robert Johnson, in his capacity as Admissions Officer ("Johnson"), Ray LaHood, in his capacity as Secretary of the Department of Transportation ("Secretary"), the United States Merchant Marine Academy (the "USMMA" or the "Academy"), the United States Maritime Administration (the "Administration") and the United States Department of Transportation (the "Department of Transportation"), pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701-706 (the "APA"), seeking review of the decision of the Academy, acting through Johnson, denying them admission to the Academy's Class of 2016.

By Order to Show Cause, plaintiffs seek declaratory relief, pursuant to 28 U.S.C. § 2201, and for the issuance of a writ of mandamus, pursuant to 28 U.S.C. § 1361, directing defendants to enroll the plaintiffs in the Academy's Class of 2016. The Class of 2016 is scheduled to enter the Academy on Thursday, July 5, 2012. In particular, plaintiffs argue that, as residents of Wisconsin who were found to be qualified candidates for appointment to the Academy and who were placed on an alternates list, they were entitled to fill the vacancies for the Wisconsin allocation under the statute prior to candidates from a national alternates list being selected by the Academy to fill those vacancies. In response, the Academy has stated that, in filling vacancies after candidates from various jurisdictions decline appointments, it has a policy of transitioning

1

on April 1 from an alternate list by jurisdiction (in order of merit) to a national alternate list (in order of merit) for the purpose of ensuring that it can fill open slots by the nationally recognized college acceptance deadline of May 1.

On July 2, 2012, after full briefing and oral argument on plaintiffs' request for emergency relief, the Court orally denied the request for declaratory relief and the issuance of the writ of mandamus. For the reasons set forth on the record and below, this Court concludes that the defendants' interpretation of the applicable statute and its own regulations is reasonable, and plaintiffs have failed to demonstrate entitlement to the extraordinary relief of a writ of mandamus based upon the record before this Court. Although plaintiffs contend that the Academy's transition to the national alternate list after April 1 is inconsistent with the unambiguous language of the applicable statute and regulations, the Court disagrees. As a threshold matter, Congress has not spoken unambiguously in the statute as to the precise question at issue – namely, when the transition should be made to a national list of alternates. Moreover, Congress has delegated to the Secretary of Transportation the power to establish the competitive system for appointments to the Academy. Specifically, under the applicable statute, Wisconsin is allocated four appointments, or offers of admissions, to the Academy and the Secretary must appoint individuals to fill those positions in order of merit of individuals nominated from that jurisdiction. For the Class of 2016, the Academy offered appointments to six qualified nominees from Wisconsin, thus complying with the statute. The Academy initially extended five appointments to the top five qualified nominees from Wisconsin; when one nominee from Wisconsin declined prior to April 1, the Academy extended an appointment to the next qualified alternate from Wisconsin. However, when three qualified nominees from Wisconsin declined their appointments in April, the Academy extended appointments to the next best qualified nominees from the national alternates list, which did not include plaintiffs. There is no explicit language in the applicable statute or regulations that requires that the alternates list from a particular jurisdiction must be exhausted before the utilization of a national alternate list. The language of the statute and regulations is, at minimum, ambiguous. As set forth by the Academy's Director of Admissions, the Academy (like other federal service academies) makes the transition to the national alternate list on April 1 in order to ensure it call fill its incoming class by the May 1 date, which is nationally recognized for college acceptance. Based upon the record before this Court, this is a reasonable interpretation by the defendants of the statute and their own regulations. Thus, plaintiffs have not demonstrated entitlement to declaratory relief or the drastic remedy of a writ of mandamus. Accordingly, plaintiffs' application is denied in its entirety.

I. BACKGROUND

A. Factual Background

The following facts are drawn from the plaintiff's complaint and petition for Writ of Mandamus ("Compl.") as well as from defendants' opposition papers. As a review of the facts demonstrates, the material facts are essentially not in dispute for purposes of the motion; rather, plaintiffs challenge the defendants' interpretation of the applicable statute and regulations pertaining to admission to the Academy.

According to the complaint, plaintiffs are residents of the State of Wisconsin which, each year, is allocated four vacancies in the Academy's entering Class. (Compl. ¶ B.) Plaintiffs were each duly nominated by a Wisconsin Senator or Member of Congress for admission to the Academy's Class of 2016. (*Id*. ¶ C.) Plaintiffs were found to be academically and otherwise qualified for appointment to the Academy, and were designated by Kumar and Johnson as "on hold" or "alternate" candidates for appointment to the Academy and were promised consideration for entry into the Class of 2016 as vacancies occurred "'on the state [Wisconsin] listings. . .'" (*Id*. (citing Pl.'s Exs. 1 and 2).)

According to plaintiffs, only one candidate from Wisconsin accepted appointment, and therefore, three vacancies allocated to Wisconsin still exist because the three candidates designated as "principal" candidates declined their appointment to the Academy's Class of 2016. (*Id*. ¶¶ D, 13.) In May 2012, plaintiffs learned of the three remaining Wisconsin vacancies and immediately asked Kumar and Johnson to comply with the C.F.R. and their promises to appoint them to these vacancies. (*Id*. ¶ E.) Plaintiffs argue that since they are qualified alternate candidates from Wisconsin, they were and are entitled to appointments to fill Wisconsin's vacancies in the Class of 2016 before any non-Wisconsin residents. (*Id*. ¶ 14.) Kumar and Johnson refused. (*Id*. ¶ E.) After unsuccessful efforts, on June 6, 2012, counsel wrote to LaHood and Matsuda seeking immediate administrative relief. (*Id*. ¶ F.) On June 14, 2012, their request was denied. (*Id*. ¶ G.)[1]

According to the defendants, the Academy extends more appointments than actual spaces in the class and the total number of appointments that are extended is based upon the expected number of acceptances versus declinations, which constitutes the "yield." (Captain Robert Johnson Declaration in Opposition to Plaintiff's Order to Show Cause, dated June 22, 2012, (the "Johnson Declaration"), ¶ 7.) The estimated yield for the Class of 2016 is 73%, and thus, appointments were extended to 390 applicants, in anticipation of enrolling a class of 277. (*Id*. ¶ 10.) However, 281 accepted these appointments. (*Id*.) Each appointment letter notifies the applicant that he or she must accept by May 1 and failure to accept by May 1 is deemed a rejection of the appointment. (*Id* ¶ 12.) Prior to April 1, if an appointment is declined, the Academy extends an appointment to the next alternate from the same jurisdiction. (*Id*. ¶ 21.) On or about April 1, the Academy takes the remaining qualified nominees from each jurisdiction who have not yet received appointments and creates a national alternates list on which all of those remaining nominees are ranked in order of merit, regardless of jurisdiction. (*Id*. ¶ 22.) After April 1, if an appointment is declined, the Academy extends an appointment to the next alternate on the national alternates list, in order of merit. (*Id*. ¶ 23.)

---

[1] Defendants noted that there were qualified nominees from twelve other states who were in the same position as plaintiffs, and also did not receive appointments. (*See* Declaration of Captain Robert Johnson in Opposition to Plaintiff's Order to Show Cause, June 22, 2012, at ¶ 33 ("There are several other jurisdictions in the same position as Wisconsin this year. Wisconsin is one of thirteen States with more appointments extended by the USMMA this year than the number of appointments allocated to that State by law, with fewer acceptances than the number allocated. Each of those States had additional qualified nominees who ultimately did not receive appointments once they were placed on the national alternates list because they did not rank highly enough in order of merit.").)

Defendants assert that this is done once each jurisdiction has received the minimum number of appointments as required under 46 C.F.R. § 310.53(b), in order to ensure that the Academy fills its incoming class by the nationally recognized college acceptance deadline of May 1. (*Id.*) In particular, as set forth in detail in the Supplemental Declaration of Captain Robert Johnson (Director of Admissions as the USMAA), the transition to the national list after April 1 not only allows them to enroll the best qualified class, but also avoids the possibility that the USMAA will be under-enrolled:

> On or about April 1, the USMAA extends an appointments [sic] to the number of alternates on the national alternates list, in the order of merit in accordance with the statutory command of 46 U.S.C. § 51302(d)(3), required to meet its projected yield. This is done to ensure that the USMMA fills its incoming class by the nationally-recognized college acceptance deadline of May 1. The USMMA did not extend any appointments after on or about April 1. The USMAA transitions to its national alternates list in order to enroll the best qualified class. In my experience, as the May 1 national deadline approaches, the longer the USMMA waits to begin extending appointments from the national alternates list, the less likely it will be able to enroll the best qualified candidates off that list. Depending on when an applicant has completed his or her application, as set forth above, a qualified applicant may have been waiting since as early as October to receive a response to the application. At the same time, it has been my experience that qualified applicants receive offers of admission at other institutions of higher education. The longer the USMMA waits to transition to the national alternates list, the greater the risk of losing that qualified applicant to another institution, many of which require non-refundable deposits as early as March 1. In addition, it has been my experience that the reason many applicants wait until late April to decline an offer of admission to the USMMA is because they are waiting to hear from a competing Service Academy. Consequently, the USMMA moves to the national alternates list on or about April 1 because the USMMA wants to enroll the best qualified incoming class possible from the pool of qualified applicants, and does not want to lose the best qualified candidates to competing institutions. *Significantly, if the USMMA did not transition to the national alternates list on or about April 1, it would be at risk of under-enrollment and a less qualified entering class in contravention of 46 U.S.C. § 51302(d)(3).*

(Supplemental Declaration of Captain Robert Johnson, dated July 3, 2012, ("Supplemental Johnson Declaration"), ¶¶ 11-17 (emphasis added).)

As noted above, the State of Wisconsin is allocated four appointments to the Academy. (Johnson Declaration, ¶ 5.) According to defendants, more than four individuals were nominated from Wisconsin for admission to the Class of 2016, the Academy reviewed the nominees, determined an order of merit, and extended an appointment to the top five qualified

4

nominees. (*Id.*) Prior to April 1, 2012, one Wisconsin nominee who received an appointment declined, and thus, the Academy extended an appointment to the next qualified alternate from Wisconsin. (*Id.* ¶ 25.) Thus, prior to April 1, six appointments were offered to qualified nominees from Wisconsin, and plaintiffs were not among them. (*Id.* ¶ 26.) As of April 1, 2012, five appointments to qualified nominees from Wisconsin were still open. (*Id.* ¶ 27.) On or about April 1, 2012, the Academy moved plaintiffs to the national alternate list where they were ranked in order of merit together with all other remaining qualified nominees. (*Id.* ¶ 28.) Only one of the six qualified nominees from Wisconsin who received an appointment accepted and of the four remaining appointments that were extended, three were declined during the month of April and one never responded, and thus was deemed declined as of May 2. (*Id.* ¶ 29.) When the three qualified nominees from Wisconsin declined their appointment in April, the Academy followed its standard admissions procedure and extended appointments to the next best qualified nominee from the national alternates list. (*Id.* ¶ 30.) Plaintiffs were not selected from the national alternates list to receive an appointment. (*Id.* ¶ 31.)

The Supplemental Johnson Declaration contains the following additional statistics:

> This year the national alternates list consisted of 250 qualified applicants. For the Class of 2016, the USMAA extended thirty appointments from the national alternates list, twenty-four of whom accepted by the May 1 deadline. Consistent with the USMMA practice over the last three admission cycles, having achieved its yield for the Class of 2016, the USMMA did not extend any appointments after on or about April 1, despite the fact that six national alternates list appointees declined their appointments. Plaintiffs did not rank among the top thirty on the Class of 2016 national alternates list.

(Supplemental Johnson Declaration, ¶¶ 18-21.)

Finally, the defendants note that the Academy's admissions practice of transitioning to a national list on or about April 1 of each year "is consistent with the practices followed by other Federal service academies that have similar admissions procedures." (Johnson Declaration, ¶ 34.) In particular, the Academy's Director of Admissions explains:

> [I]t is my understanding that the United States Military Academy and the United States Naval Academy both similarly interpret the term "appointment" (as that term is used in the laws governing their admissions procedure) to mean an "offer of admission," rather than an enrollment. In addition, it is my understanding that those academies transition from a list of qualified nominees from each jurisdiction to a national list on or about April 1 of each year, as the USMMA does.

(*Id.*)

### B. Procedural History

Plaintiffs brought this action, by Order to Show Cause, on June 14, 2012. The parties participated in a telephone conference on June 15, 2012, and the Court set a briefing schedule. Defendants submitted their opposition on June 22, 2012.

Plaintiffs filed their reply in June 28, 2012. The parties participated in oral argument on July 2, 2012. As requested by the Court, defendants filed a supplemental declaration on July 3, 2012. Plaintiffs filed a response to the supplemental declaration on July 3, 2012. Additional argument also was heard on July 3, 2012. The Court then ruled orally from the bench denying the request for the writ, and stated that this written Memorandum and Order would follow.

## II. MANDAMUS RELIEF

28 U.S.C. Section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of "'a clear nondiscretionary duty.'" *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1094)); *see also Escaler v. U.S. Citizenship & Immigration Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) ("Of course, mandamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes 'a clear nondiscretionary duty.'" (quoting *Heckler*, 466 U.S. at 616)). Moreover, the Second Circuit has articulated the strict requirements for this extraordinary remedy:

> The prerequisites for issuance of a writ of mandamus are peremptory: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available."

*Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (quoting *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972)). In short, as the Supreme Court has emphasized, mandamus "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)).

## III. STANDARD OF REVIEW

Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In its review, a court may:

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be –
>
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .

5 U.S.C. § 706(2)(A).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867 (1983). "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245-246, 9 L.Ed.2d 207 (1962)).

Under Supreme Court and Second Circuit jurisprudence, "[w]hether a court defers to an agency's interpretation 'depends in significant part upon the interpretative method used and the nature of the question at issue.'" *Encarnacion v. Astrue*, 568 F.3d 72, 78 (2d Cir. 2009) (quoting *Barnhart v. Walton*, 535 U.S. 212, 222 (2002)). First, "[w]hen Congress has entrusted rulemaking authority under a statute to an administrative agency, we evaluate the agency's implementing regulations under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed.2d 694 (1984)." *Id.*

In *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, the Court set forth a two-step process to determine whether deference should be given to an agency interpretation of its regulations and governing statutes:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Further, the Court stated that, "[w]e have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Id.*

In 2001, the Supreme Court considered the limits of *Chevron* deference owed to administrative practice in applying a statute in *United States v. Mead Corporation*, 533 U.S. 219, 121 S. Ct. 2164, 150 L.Ed.2d 292 (2001). In *Mead*, the Court held that:

> [a]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent.

*Id.* at 226-227. Thus, *Chevron* deference is generally unwarranted where a policy is not contained in the regulations themselves or another format authorized by Congress for issuing legislative rules, but rather is explained in an informal source, such as a training manual. *See, e.g.*, *Estate of Landers v. Leavitt*, 545 F.3d 98, 106 (2d Cir. 2009) ("Although nonlegislative rules are not per se ineligible for *Chevron* deference as a general matter, we are aware of few, if any, instances in which an agency manual, in particular, has been accorded *Chevron* deference.").

7

However, as the Second Circuit has noted, pursuant to *Auer v. Robbins*, 519 U.S. 452 (1997), "[a] similar deference applies when an agency interprets its own regulations." *Encarcion*, 568 F.3d at 78. More specifically, "[t]hat interpretation, regardless of the formality of the procedures used to formulate it, is 'controlling unless plainly erroneous or inconsistent with the regulation[s].'" *Id.* (quoting *Auer*, 519 U.S. at 461 (internal quotation marks omitted)).

Finally, "[e]ven if neither *Chevron* nor *Auer* applies, an agency's interpretation is still entitled to respect according to its persuasiveness under *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161, 89 L.Ed. 124 (1944)." *Encarcion*, 568 F.3d at 78. The weight given to an interpretation under *Skidmore* "depends 'upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Encarcion*, 568 F.3d at 79 (quoting *Skidmore*, 323 U.S. at 140.)

In the instant case, because the Academy's policy of transferring to a national list on April 1 is not contained in the regulations themselves, the Court does not apply *Chevron* deference to the interpretation. However, because it does involve an agency's interpretation of its own regulations, *Auer* deference is warranted. In any event, even under the *Skidmore* standard, the Court concludes that it is entitled to respect according to its persuasiveness because of the validity of its reasoning, as discussed below.

### IV. DISCUSSION

#### A. The Statute and Regulations

Title 46, Section 51301 of the United States Code provides that:

(a) In General. – The Secretary of Transportation shall maintain the United States Merchant Marine Academy as an institution of higher education to provide instruction to individuals to prepare them for service in the merchant marine of the United States, to conduct research with respect to maritime-related matters, and to provide such other appropriate academic support, assistance, training, and activities in accordance with the provisions of this chapter as the Secretary may authorize.

(b) Recruitment. – The Secretary of Transportation may, subject to the availability of appropriations, expend funds available for United States Merchant Marine Academy operating expenses for recruiting activities, including advertising, in order to obtain recruits for the Academy and cadet applicants.

46. U.S.C. § 51301. Title 46, Section 51302 governs the nomination and competitive appointment of candidates to the Academy. 46 U.S.C. § 51302. Section (a) sets forth the requirements for appointment and Section (b) sets forth how a candidate can be nominated for appointment. 46 U.S.C. § 51302(a) and (b); *See also* 46 C.F.R. § 310.53. Section (c) of U.S.C. § 51302 provides the number of allocated positions for competitive appointments for each jurisdiction for each year. 46 U.S.C. § 51302(c).

The statute gives the Secretary of Transportation the power to establish the system of appointment. The statute provides: "The Secretary shall establish a competitive system for selecting individuals nominated under subsection (b) to fill the

positions allocated under subsection (c). . . ." 46 U.S.C. § 51302(d)(1). The statute further provides that, "[t]he Secretary shall appoint individuals to fill the positions allocated under subsection (c) for each jurisdiction in the order of merit of the individuals nominated from that jurisdiction." 46 U.S.C. § 51302(d)(2). However, the statute further states that "[i]f positions remain unfilled after the appointments are made under paragraph (2), the Secretary shall appoint individuals to fill the positions in the order of merit of the remaining individuals nominated from all jurisdictions." 46 U.S.C. § 51302(d)(3).

The federal regulations promulgated under this statute explain that:

> (1) The Administrator[2] shall make appointments to fill the vacancies allocated pursuant to paragraph (b) of this section from among qualified nominees, in order of merit, from each geographical area. The order of merit shall be established according to the procedure as specified in § 310.57(b). Such appointments first shall be made from among residents of each geographic area listed in paragraph (b) of this section. Thereafter, appointments shall be made from among residents of each geographic area listed in paragraph (b) of this section. Thereafter appointments shall be made from among remaining qualified nominees (national alternates) in order of merit regardless of the area of residence.

46 C.F.R. § 310.53(e)(1). Moreover, the regulations provide the following:

> Selection of midshipmen for appointment to fill vacancies allotted to the various States and other locations, as specified in § 310.53(b)(1) and (2) of this subpart, shall be in order of merit. The order of merit shall be determined on the scores of the required entrance examinations, on assessment of the academic background of the individual and on such other factors as are considered by the Academy to be effective indicators of motivation and the probability of successful completion of training at the Academy. No preference shall be granted in selecting individuals for appointment because one or more members of their immediate families are alumni of the Academy.

46. C.F.R. § 310.57(b). Candidates are notified of the results of the selection process "about May 1 each year." 46 C.F.R. § 310.57 (c). The regulations also provide that "[a]lternates will replace principal candidates who decline appointment or fail to meet the physical requirements or the security and suitability investigation." 46. C.F.R. § 310.57 (c).

### B.   Analysis

Plaintiffs argue that they are entitled to fill the three vacancies in Wisconsin's allocation to the Class of 2016. (Compl. ¶ H.) Plaintiffs further argue that the defendants' decision "[I]s invalid because it was made on unreasonable grounds and without proper consideration of the circumstances," and that the decision not to extend appointments to the plaintiffs was arbitrary. (Compl. ¶¶ H, 16). Plaintiffs take the position that the "defendants' position

---

[2] "Administrator" is defined in the regulations as "[t]he Administrator of the Maritime Administration" and "Administration" is defined in the regulations as "[t]he Maritime Administration, Department of Transportation." 46 C.F.R. § 310.51.

9

patently violates the above regulations and the Academy's published position defining its admission processes and was therefore based on unreasonable grounds." (Compl. ¶ 15.) However, for the reasons set forth below, this Court concludes that the defendants' interpretation of the statute and regulations is reasonable, and that plaintiffs are not entitled to a writ of mandamus.

1. Appointments

Defendants argue that the term "appointment" is used in the laws governing the admission procedures to the Academy to mean an "offer of admission." (Johnson Declaration, ¶¶ 6, 34.) Based on the plain meaning of the term in the statute, it is clear that the defendants' interpretation is correct.

Although "[a]ppointment" is not defined in the relevant statute or regulatory scheme, the statutory language makes clear that it is a reference to an offer of admission, not enrollment. In particular, the statute provides that individuals may be nominated for competitive appointment by those persons enumerated in the statute. 46 U.S.C. § 51302(d)(1). The statute also gives the Secretary of Transportation the power to appoint individuals to fill the positions for each jurisdiction. 46 U.S.C. § 51302(d)(2); *see also* 46 C.F.R § 310.53. Moreover, the statute also provides that "[i]f positions remain unfilled after the appointments are made under paragraph (2), the Secretary may appoint individuals to fill the positions in the order of merit of the remaining individuals nominated from all jurisdictions." 46 U.S.C. § 51302(d)(3); *see also* 46 C.F.R § 310.53 Thus, it is clear from the statutory language in Section 51302(d)(3) that, like an offer of admission, a potential enrollee in the Academy may turn down the appointment, and an alternate may be selected by the Secretary of Transportation from a national list of alternates. If "appointments" referred to the actual enrollment of students rather than an offer of admission, this statutory scheme and language would simply not make sense. Thus, it is clear from that statutory language and framework that the defendants' interpretation of an appointment as "an offer of admission" is reasonable.

2. Transition from State Alternate List to National List

Plaintiffs allege that "Defendant[s] Kumar (and Johnson) have taken the position that if they 'offer' appointments to a state's principle candidates, and if such candidates do not accept by May 1, they can then ignore and skip that part of the regulations requiring that a state's vacancies be offered to a state's alternate candidates before such vacancies be offered to national alternate candidates. . . . defendants' position patently violates the above regulations and the Academy's published position defining its admission processes and was therefore based on unreasonable grounds." (Compl. ¶ 15.) The Court disagrees with the plaintiffs' position and concludes that defendants' interpretation of the statute and regulations is reasonable.

First, the statute clearly gives the Secretary the authority to establish the system for selecting individuals who will receive appointments. *See* 46 U.S.C. § 51302(d)(1). The statute, however, directs that "[t]he Secretary shall appoint individuals to fill the positions allocated under subsection (c) for each jurisdiction in the order of merit of the individuals nominated from that jurisdiction." 46 U.S.C. § 51302(d)(2). The statute clearly provides that "[i]f positions remain unfilled after the appointments are made under paragraph (2), the Secretary shall appoint individuals to fill

10

the positions *in the order of merit of the remaining individuals nominated from all jurisdictions*." 46 U.S.C. § 51302(d)(3) (emphasis added).  Thus, the language of the statute provides that unfilled vacancies are to be filled from all jurisdictions, not just by the alternates of each geographic location.

Here, the USMAA extended appointments to a total of six qualified nominees from Wisconsin, which was above the allocation of four appointments for Wisconsin. Although plaintiffs contend that the statute requires the creation of an alternate list of qualified nominees by jurisdiction and the exhaustion of that list before the selection of alternates on a national level, the statute does not contain any such language.  The statute is, at a minimum, ambiguous as to whether an alternate list by jurisdiction is required and, if so, whether that list must be exhausted before transition to an national alternate list.

The regulations also are ambiguous on the issue of the timing of the transition to a national list of alternates.  Plaintiffs rely on 46 C.F.R. § 310.53(e)(1) and 310.57(c) and claim that when read together, "it is clear that the alternates from each state must replace principals from that state who decline appointments or fail to meet other requirements." (Compl. ¶ 10.) 46 C.F.R. § 310.53(e)(1) provides that, after appointments are made from among the residents of each geographic area, "[t]hereafter, appointments shall be made from among residents of each geographic area listed in paragraph (b) of this section." However, the section further states that "[t]hereafter appointments shall be made from among remaining qualified nominees (national alternates) in order of merit *regardless of the area of residence*" 46 C.F.R. § 310.53(e)(1) (emphasis added). Thus, the very regulation relied upon by plaintiffs clearly indicates that first alternates will be considered from their geographic location, but they will then be considered from a national alternatives list regardless of their location.  The regulation is silent as to the timing of that transition.

Moreover, plaintiffs' reliance on 46 C.F.R. § 310.57(c) is misplaced.  Although plaintiffs are correct that it states that "[a]lternates will replace principal candidates who decline appointment or fail to meet the physical requirements or the security and suitability investigation," it does not specify whether alternates will be selected by geographic location or off of a national list.  Thus, the regulations do provide that the Academy may extend appointments to alternates, first based on geography, then based on merit regardless of residency.

In light of the ambiguity in the statute and regulations, the USMMA's policy of transitioning to the national list of alternates after April 1 is not plainly erroneous or inconsistent with the statute or regulations.  As explained in the supplemental declaration, the transition to the national list of alternates after April 1 is necessary to ensure that the USMMA will be able to fill its incoming class by the nationally-recognized college acceptance deadline of May 1. As the USMMA's Director of Admissions emphasizes, "Significantly, if the USMMA did not transition to the national list on or about April 1, it would be at risk of under-enrollment and a less qualified entering class in contravention of 46 U.S.C. § 51302(d)(3)." (Supplemental Johnson Declaration, ¶ 17.) Thus, when the USMMA's compelling need to ensure that it will be able to fill its incoming class pursuant to the authority delegated by Congress is analyzed in light of the ambiguity in the statute and regulations as to the transition to a national alternate list, the

defendants' interpretation of the statute and its own regulations is reasonable.

Although plaintiffs argue that the statute and regulations give the defendants absolutely no discretion to move to the national list until all the qualified alternates from Wisconsin have been given appointments according to the allocation and have declined, that arguments fails for two reasons.  First, as discussed above, no such language is explicitly contained in the statute or regulations.  Second, such an interpretation, which would deprive the defendants of all discretion as it relates to the timing of appointments, could lead to absurd results.  For example, such a narrow interpretation of the statute and regulations would potentially require the defendants to keep an appointment open to a state alternate indefinitely, until the USMAA received a response either accepting or declining the appointment.  Thus, the lack of discretion to set deadlines and utilize the national alternate list when necessary could jeopardize the USMAA's ability to fill its incoming class.  The USMAA, where the statute and regulations are ambiguous, should be permitted to interpret its own regulations in a manner that allows the USMAA, once appointments are initially made in accordance with the statutory allocations by jurisdiction, to fill any remaining vacancies by utilizing an alternate list by jurisdiction until April 1, but then transitioning to the national alternate list to ensure that the Class of 2016 is filled.  Their interpretation of their own regulations is entitled to deference and is reasonable in light of the ambiguous language of the statute and regulations, as well as the practical issues that the USMAA must confront in creating and implementing an admissions procedure that will allow for the Class of 2016 to be filled from the list of qualified alternates, regardless of jurisdiction.

As explained in the Johnson Declaration, the candidates are transferred to the national alternates list on or about April 1 "[t]o ensure that the [Academy] fills its incoming class by the nationally recognized college acceptance deadline of May 1." (Johnson Declaration, ¶ 23.) According to defendants, May 1 is "the national date used universally by all colleges, universities, and service academies in the United States as the deadline for accepting offers of admission." (Defendants' Brief in Opposition to Plaintiffs' Order to Show Cause, 3-4.) Thus, there is a "'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs.* 463 U.S. at 43 (quoting *Burlington*, 371 U.S. at 168).

Here, Congress has clearly given the Secretary of Transportation, *inter alia*, the power to maintain the Academy and develop a system for competitive appointment of individuals.  46 U.S.C. §§ 51301, 51302(d). The statute promulgated by Congress clearly provides that after the Secretary appoints individuals to fill positions for each jurisdiction in order of merit, the remaining unfilled positions shall be filled "[i]n the order of merit of the remaining individuals nominated from all jurisdictions." 46 U.S.C. § 51302(d).  Thus, implicit in the statute is the need for the Secretary to ensure that there is a full class of upcoming students.  In order to fulfill this task, it is necessary that certain deadlines, consistent with Congress' mandate, be set in place.  Moving candidates from a geographical list of alternates to a national alternates list approximately one month prior to May 1 is consistent with the need to fill an incoming class.  Thus, there is a need to determine an incoming class for the Academy by early May of each year, and therefore, moving candidates to a nationally ranked list on or about April 1 each year is a

reasonable construction of the applicable statute and regulations.[3]

Plaintiffs also attempt to argue that their interpretation of the statute is consistent with the Academy's website's description of the appointment and alternate process. Plaintiffs note that the website states that "remaining qualified candidates will be designated as alternates, to be appointed in order of merit should openings occur *within their states.* (emphasis added) . . . *In the event that a state fails to satisfy its allotment, appointments to fill the unfilled vacancies are determined from the national list of alternates, ranked in order of merit as described above*. . . . (emphasis added). (Compl. ¶¶ 11-12, (citing http://www.usmma.edu/admissions).)[4]

However, this summary is not inconsistent with the defendants' interpretation of the governing statute and regulation. As noted above, the website does tell applicants that, if the state fails to fulfill its allotment, there will be a national list of alternatives, ranked in order of merit, from which vacancies will be filled. The website is silent as to when the transition to the national alternate list will occur. In other words, it does not articulate the particular point in time at which the USMAA makes the determination that the state has failed to fulfill its allotment and the transition is made to the national alternate list. Thus, although the April 1, 2012 date of moving the candidates to the national list is not noted, such a transition is not inconsistent with the website's language. In any event, the language of the website, while it may considered by the Court, is not a binding agency interpretation.

In sum, for the reasons discussed *supra*, plaintiffs have not demonstrated an entitlement to a writ of mandamus. As discussed above, in order for a writ of mandamus pursuant to 28 U.S.C. 1361, there must be "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson*, 881 F.2d at 5. However, plaintiffs have failed to demonstrate that they have a clear right to enrollment in the Academy's 2016 class, nor have they demonstrated that the defendants had a peremptory duty to offer them an appointment. As discussed *supra*, the statutory scheme and regulations provide that alternates will be selected based on geography and then based on a nationally ranked list. Plaintiffs are unable to identify

---

[3] As noted *supra*, defendant Johnson also states that other federal service academies follow the same procedure:

> It is my understanding that [the Academy's] admissions practice is consistent with the practices followed by other Federal service academies that have similar admissions procedures. For example, it is my understanding that the United States Military Academy and the United States Naval Academy both similarly interpret the term "appointment" (as the term is used in the laws governing their admissions procedures) to mean an "offer of admission," rather than an enrollment. In addition, it is my understanding that those academies transition from a list of qualified nominees from each jurisdiction to a national list on or about April 1 of each year, just as the [Academy] does.

(Johnson Declaration, ¶ 34.) Thus, although not dispositive, the evidence that several other federal service academies in the United States have reached the same interpretation under analogous statutes and regulations provides additional support for the reasonableness of the defendants' interpretation.

[4] The Court was unable to locate the cited text at http://www.usmma.edu/admissions. However, the cited text was located http://www.usmma.edu/admissions/facts/appointments.shtml (accessed June 26, 2012).

any section of the relevant statute or regulation that unambiguously gives them a right to be appointed. Moreover, as discussed *supra*, this Court has found that, given the ambiguity in the statute and regulations, defendants' interpretation of its own regulations is entitled to deference and is reasonable. Accordingly, plaintiffs are not entitled to mandamus relief.

### V. CONCLUSION

For the reasons set forth above, and orally on the record on July 3, 2012, the Court denies plaintiffs' application, by order to show cause, for declaratory relief and a writ of mandamus in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  July 5, 2012
        Central Islip, NY


\* \* \*

The attorney for plaintiffs is Lawrence J. Bowles, Nourse & Bowles, LLP, One Exchange Plaza at 55 Broadway, New York, New York 10006-3030. Defendants are represented by Loretta E. Lynch, United States Attorney, by James Knapp and Thomas A. McFarland, Assistant United States Attorneys, 610 Federal Plaza, Central Islip, New York 11722.